2026 IL App (1st) 232006-U

Fourth Division
Filed July 23, 2026

No. 1-23-2006

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | |
|---|---|
| IRENE LYONS and JACOBY RADFORD, | ) |
|     Plaintiffs-Appellants, | ) Appeal from the |
| | ) Circuit Court of Cook County |
|     v. | ) |
| | ) No. 2022 L 01722 |
| MARSHA E. GORENS, M.D., and MARSHA | ) |
| GORENS, M.D., GYNECOLOGY & | ) Honorable Bridget Hughes, |
| HORMONE THERAPY, | ) Judge, presiding. |
|     Defendants-Appellees. | ) |

JUSTICE QUISH delivered the judgment of the court.
Presiding Justice Navarro concurred.
Justice Ocasio dissented.

**ORDER**

¶ 1     *Held*: Circuit court did not abuse its discretion by granting defendants' motion *in limine* or denying plaintiffs' motion for new trial based on alleged violations of that order and alleged improper comments during defendants' opening statement and closing argument and plaintiffs were not entitled to a new trial on damages.

¶ 2     Plaintiff Irene Lyons and her husband, Jacoby Radford, filed a medical negligence case against defendants Dr. Marsha E. Gorens, M.D. and her practice, Marsha Gorens, M.D., Gynecology & Hormone Therapy (collectively, "defendants"), alleging that Gorens prescribed her bioidentical hormone replacement therapy in the form of implanted pellets without disclosing the associated risks and despite Lyons' family history of breast cancer during her treatment. Lyons

subsequently developed breast cancer. Radford alleged a claim for loss of consortium. The jury found in favor of plaintiffs and awarded them $140,000. The circuit court entered judgment on the verdict and later denied plaintiffs' post-trial motion. For the following reasons, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4        As relevant to the issues on appeal, plaintiffs' complaint alleged theories of medical negligence and treatment without informed consent. Prior to trial, the circuit court granted plaintiffs' motion *in limine* No. 6, precluding comparative fault and contributory negligence evidence and motion *in limine* No. 21, barring testimony or reference to Dr. Gorens' personal practice. The circuit court also granted defendants' motion *in limine* No. 33, precluding reference to the hormone pellets as non-FDA approved. The matter proceeded to a jury trial in April 2023.

¶ 5        At trial, Lyons testified that, in 2013, she obtained medical care from Dr. Gorens, whom a colleague had recommended, to address menopause-related symptoms including hot flashes, night sweats, and recurring urinary tract infections. During her initial consultation with Dr. Gorens in October 2013, Lyons informed Dr. Gorens of her family history of breast cancer, including her mother and paternal aunt. Dr. Gorens recommended a subcutaneous hormone pellet therapy. Lyons testified that Dr. Gorens informed her the hormone-infused pellets were expected to alleviate symptoms and provided protection against breast cancer. She did not tell Lyons that the treatment would increase her risk of breast cancer. Based on this information, Lyons chose to undergo that treatment. Lyons testified that if Dr. Gorens told her that this pellet hormone therapy would increase her risk of breast cancer, she would not have consented to it. She received the first treatment in January 2014.

¶ 6        Lyons testified that in June 2015, her primary care physician found a lump in her breast. Lyons saw Dr. Gorens the next day and received the hormone treatment, but Lyons did not tell Dr. Gorens about the lump. Lyons later underwent diagnostic imaging that revealed cancer in her left breast. Lyons' oncologist inquired about the implanted hormone therapy pellets and recommended their removal. Dr. Gorens informed her the pellets were not removable because they were dissolved.

Lyons then underwent two cancer surgeries on her left breast. Testing later revealed another breast cancer in her right breast, for which Lyons had additional surgery. She also had radiation and other treatments.

¶ 7        Radford, Lyons' husband, testified that Lyons' diagnosis and treatment caused disruption to their family and household life and that he assumed increased childcare and domestic responsibilities as a result. Radford assumed the household cooking, laundry, and cleaning duties, which Lyons normally had taken care of prior to her illness. He further testified that Lyons was slightly depressed and scared, and he was nervous and concerned about what would happen. Radford expressed concern regarding the possibility of recurrence and indicated feelings of helplessness.

¶ 8        Dr. Gorens, a board-certified obstetrician-gynecologist, testified that her practice involved treating menopausal patients with hormone therapy. She has used hormone therapy pellets with 200 patients a year. She testified that she complied with the standard of care in her treatment of Lyons, explaining that she obtained a thorough patient history, selected appropriate hormones, monitored laboratory results, and counseled Lyons at each visit. She further testified that the standard of care did not require her to perform a breast exam during hormone therapy visits. Dr. Gorens stated that she found hormone replacement therapy safe and prescribed this type of therapy to friends and family. Dr. Gorens told Lyons about a study with Premarin and Provera hormones which showed an increased risk of heart attacks, strokes, and breast cancer, but explained that she used bioidentical hormones instead of Premarin and Provera and these decrease the risk of breast cancer. Lyons had many questions because of her family history of breast cancer and Dr. Gorens answered them. On January 3, 2014, Dr. Gorens inserted hormone therapy pellets in Lyons subcutaneously. Lyons continued receiving pellet therapy for two years and reported relief of her menopausal symptoms. Lyons followed up with her routine visits and blood work. Dr. Gorens also testified that Lyons did not inform her that Lyons' primary doctor had discovered a lump in her breast the day before Lyons' last pellet insertion. Dr. Gorens testified that she would not have proceeded with the pellet insertion if Lyons told her about the lump.

¶ 9       Dr. Gorens acknowledged that Lyons informed her at the initial consultation that Lyons' mother and paternal aunt both had breast cancer. Dr. Gorens also acknowledged that she told Lyons that hormone therapy would not increase her risk of breast cancer and that the testosterone and progesterone in the therapy would actually decrease her risk of breast cancer. Dr. Gorens acknowledged that the consent forms Lyons signed lacked any warning of increased breast cancer risk. She noted that compounded hormones like the ones she prescribed to Lyons do not carry these warnings and admitted she does not follow the American College of Obstetricians and Gynecologists' recommendation against their use. The warnings Lyons received advised Lyons that this was not the usual and customary means of hormone replacement and Dr. Gorens was one of a few doctors who administered this treatment in the United States.

¶ 10      Dr. Tara Allman, plaintiffs' expert and a specialist in gynecology and women's health, testified that Dr. Gorens breached the standard of care in her treatment of Lyons by continuing hormone therapy, failing to obtain proper informed consent, prescribing excessive hormone dosages through pellet therapy and not performing clinical breast examinations. She testified that Lyons was not informed about the increased risks of breast cancer from hormone therapy. She also stated that the increased risk of breast cancer over time from hormone therapy is less than 1%. Dr. Allman opined that pellet therapy should not be used to treat menopausal women because it produced excessive hormone levels.  She also stated that hormone therapy is not typically prescribed based on blood hormone levels, but is based on the severity of the patient's symptoms. She acknowledged that an increased risk of breast cancer was different than developing breast cancer.  Dr. Allman did not know if the hormone therapy she received caused Lyons' breast cancer.

¶ 11      Dr. John Ward, plaintiffs' oncology expert, testified to his opinion that the hormone therapy contributed to Lyons' breast cancer, which he believed developed sometime in 2014 and first became detectable by early 2015. Her November 2014 mammogram was read as normal. Dr. Ward stated that because not all breast cancers are detected by mammograms, the cancer could have begun before Lyons' treatment with Dr. Gorens.  He could not determine how much tumor growth was attributed to the hormones. Nevertheless, Dr. Ward testified that, in his opinion, the hormonal

therapy was a proximate cause of Lyons' breast cancer. He opined that if Lyons refused treatment by Dr. Gorens, she "probably would have not" had breast cancer at that time, but he did not know what would have happened in subsequent years. The hormone therapy was a risk factor for developing breast cancer. Dr. Ward stated that Lyons' cancer has the lowest rate of recurrence, but that any recurrence would likely be Stage IV and not curable. To his knowledge, Lyons had not shown any sign of recurrence of her breast cancer.

¶ 12 Defendants presented testimony from Dr. Neal Rouzier, a hormone replacement therapy expert, who opined that Dr. Gorens complied with the standard of care in recommending hormone therapy, selecting the medications, and monitoring Lyons' treatment. He also stated that pellet therapy and the dosages she prescribed to Lyons were appropriate and did not increase Lyons' risk of breast cancer. Dr. Rozier further disagreed that a family history of breast cancer contraindicated hormone therapy and testified that the therapy may be associated with lower breast cancer incidence compared to no hormone therapy.

¶ 13 On April 27, 2023, the jury returned a verdict in favor of plaintiffs for $140,000, awarding Lyons $50,000 for loss of normal life, $50,000 for pain and suffering, $25,000 for emotional distress and $15,000 for disfigurement. The jury awarded no damages to Lyons for future loss of normal life, pain and suffering, or emotional distress or increased risk of recurrence and no damages for Radford's loss of consortium claim.

¶ 14 Plaintiffs filed a post-trial motion seeking a new trial on damages only, or alternatively, a new trial on all issues, arguing that the court erred in making certain evidentiary rulings during the trial and the damages awarded were inadequate. After the circuit court denied the motion, plaintiffs timely appealed.

¶ 15                                                    II.  ANALYSIS

¶ 16 On appeal, plaintiffs challenge a series of evidentiary rulings. Specifically, plaintiffs contend that the circuit court erred in granting defendants' motion *in limine* No. 33 and improperly barred testimony regarding the fact that the hormone pellets Dr. Gorens used were not FDA approved,

allowed prejudicial and irrelevant comparisons by defense counsel, and permitted the introduction of comparative fault evidence despite a prior ruling excluding such evidence. Additionally, plaintiffs assert that the court erred in allowing repeated references to Dr. Gorens' personal practice, which, they claim, unduly influenced the jury, requiring a new trial on damages only or alternatively, a new trial on all issues.

¶ 17                          A. Defendants' Motion *in Limine* No. 33

¶ 18      Plaintiffs first contend that the circuit court abused its discretion in granting defendants' motion *in limine* No. 33 barring mention of the pellets' non-FDA approval and certain testimony by Dr. Allman. In that motion, defendants sought to bar plaintiffs from offering any testimony that Dr. Gorens prescribed and administered non-FDA approved hormones because plaintiffs had no causation testimony to establish that the fact that the hormones were not FDA approved proximately caused Lyons any injuries. Following a hearing, the court granted defendants' motion.

¶ 19      First, as defendants point out, plaintiffs have not and cannot establish any prejudicial error from the court's ruling.  "A trial court's decisions on the admissibility of evidence are entitled to deference and will not be disturbed absent an abuse of discretion." *Jefferson v. Mercy Hosp. & Med. Ctr.*, 2018 IL App (1st) 162219, ¶ 39.  An abuse of direction occurs "only when the trial court's ruling is arbitrary, fanciful, unreasonable, or where no reasonable person" would take that view. *White v. Advocate Condell Med. Ctr.*, 2026 IL App (1st) 240450, ¶ 164.  Further, "[e]rroneous evidentiary rulings are only a basis for reversal if the error was substantially prejudicial and affected the outcome of trial.'" *Jefferson*, 2018 IL App (1st) 162219, ¶ 39.  We will not reverse if it is apparent from the entire record that "no harm has been done." *Jackson v. Pellerano*, 210 Ill. App. 3d 464, 471 (1991).

¶ 20      Here, even if the trial court erred in excluding evidence that the hormone therapy at issue was not FDA approved, plaintiffs have not shown how they were prejudiced by any such error when the jury returned a verdict in favor of plaintiffs.  Although plaintiffs argue that the jury may have awarded more damages if it was aware "that the pellets were unregulated and unsafe [because]

they would have understood more the gravity of Irene's angst regarding the risk of recurrence and the actual risk of recurrence as testified by Dr. Ward," this is pure speculation without any support in the record. Plaintiffs cite no testimony or evidence from any witness that the hormone therapy was "unregulated" or "unsafe" or that the fact that it was not approved by the FDA meant that the therapy was "unregulated" or "unsafe." Further, the order granting this motion *in limine* did not constrain Lyons (or Radford) in any way from testifying about their injuries, damages or "angst regarding the risk of recurrence" or affect Dr. Ward's ability to testify as to the actual risk of recurrence. Accordingly, plaintiffs have not shown that the court's ruling on defendants' motion *in limine* No. 33 affected the outcome of the trial and thus, we reject it.

¶ 21    Additionally, we find that the trial court did not abuse its discretion in granting defendants' motion *in limine* No. 33. Defendants argued in the motion that plaintiffs' expert would testify that Dr. Gorens deviated from the standard of care in prescribing the non-FDA approved pellets, but he would not testify to any proximate cause—that the non-FDA approval caused Lyons' breast cancer. Thus, defendants argued, any testimony about whether the hormones were FDA approved was irrelevant and prejudicial. At the hearing on the motion, the circuit court explained that allowing testimony about whether the hormones were FDA approved would result in a mini-trial on how and why the FDA approves medication, which was not relevant and could cause the jury to speculate. The court allowed plaintiffs' expert to testify about the level of hormones in the pellets Dr. Gorens prescribed to Lyons and whether that level caused her breast cancer or increased her risk of developing it, whether it was safe for Dr. Gorens to prescribe those pellets, what the literature, clinical trials and medical studies recommended as well as the risks and whether Dr. Gorens should have advised Lyons about certain risks.

¶ 22    The court explained that the jury had to decide whether the amount of hormones Dr. Gorens gave to Lyons caused her cancer or caused her cancer to grow and whether it was a deviation from the standard of care for Dr. Gorens to prescribe these hormones to Lyons and not inform her about all of the risks. The court explained that its ruling did not prevent plaintiffs from presenting evidence about what Dr. Gorens should have informed Lyons or what warnings Lyons did or did

not receive. The court explained that, based on the testimony, the danger of Lyons receiving that level of hormones without being monitored was the same regardless of whether the FDA approved the drug. The court further explained that plaintiffs had no expert to testify as to what the FDA did with respect to these specific hormone pellets or that the FDA found that these pellets were not safe.

¶ 23 Although plaintiffs argue on appeal that non-FDA approved drugs, like the hormone therapy prescribed to Lyons in this case, "are generally not recognized as safe and effective," they cite no testimony in the record where any witness would have so testified, which was exactly the concern expressed by the circuit court when granting the motion *in limine*. Without any evidence to support their argument that the hormone pellets' lack of FDA approval meant that the pellets were not safe, allowing plaintiffs to argue that to the jury would have been inherently prejudicial and improperly cause the jury to speculate. Based on the facts of this case, we cannot say that the court abused its discretion in granting defendants' motion *in limine* No. 33.

### B. Closing Arguments

¶ 24 Plaintiffs next argue that they are entitled to a new trial due to defense counsel's improper statements during closing argument.

¶ 25 Counsel is allowed broad latitude during closing arguments in drawing reasonable inferences and conclusions from the evidence presented. *McCarthy v. Union Pacific Railroad Co.*, 2022 IL App (5th) 200377, ¶ 62. Counsel may "'comment and argue on the evidence and any inference that may be fairly drawn from that evidence.'" *Id.* (quoting *Clarke v. Medley Moving and Storage, Inc.*, 381 Ill. App. 3d 82, 95 (2008)). The scope of closing argument is within the sound discretion of the trial court and we will only reverse if the argument is prejudicial. *Id.*

¶ 26 First, plaintiffs argue that defense counsel violated the court's ruling on motion *in limine* No. 33. Specifically, plaintiffs point to the following statements:

> "Now, issue number two, that Dr. Gorens deviated from the standard of care by not
>
> telling Mrs. Lyons that hormone therapy increases the risk of breast cancer. This
>
> entire issue comes from the Women's Health Initiative study that you heard about

every day in this trial. It's the WHI. You will recall this is a project where there were a series of clinical studies initiated by the United States National Institutes of Health in 1991. The study was intended to address morbidity and mortality in postmenopausal women. And you'll recall the testimony of both Dr. Allmen and Dr. Rouzier, they both agreed the study was halted prematurely when it began to show an association between hormone replacement therapy and breast cancer."

Plaintiffs failed to object to any of these statements and thus, they forfeited any such objection. *Babikian v. Mruz*, 2011 IL App (1st) 102579, ¶ 13 ("the failure to object to allegedly improper comments during closing argument operates as a forfeiture of the objection."). Forfeiture aside, this comment does not reference FDA approval and thus, does not violate the order on the motion *in limine*.

¶ 27 Next, plaintiffs cite the following from defendants' closing: "The WHI study did not put compounding pharmacies out of business, which should have happened if they were dispensing dangerous breast cancer causing hormones, but it didn't, again, because bioidentical hormones are safe. You can bet that if the drugs really were as dangerous as [plaintiffs' counsel] and Dr. Allmen want you to believe, the U.S. government would have pulled it from the market." Plaintiffs' counsel objected, and the court instructed the jury "If a lawyer makes an argument that's not based upon the law or the evidence, the jury should disregard it." When defense counsel continued, "You're aware that there have been drugs that have been pulled from the market by the government. Fen-phen, dangerous," the court *sua sponte* sustained the objection and stated "There's no testimony about other drugs and how it [*sic*] relates to this case. So you shouldn't consider that type of argument."[1]

¶ 28 Plaintiffs argue that these comments violated the order on motion *in limine* No. 33 and were "extremely prejudicial," resulting in the need for a new trial on damages or, in the alternative, a

---

[1] While plaintiffs cite to another statement by defense counsel, "This drug is still on the market. This drug is on the market because it's safe," plaintiffs failed to object to that statement and thus, forfeited the argument. *Babikian*, 2011 IL App (1st) 102579, ¶ 13.

new trial. While an "improper insinuation during closing argument that violates an *in limine* order can be the basis for a new trial, [Citation.] *** improper comments during closing argument are not reversible error unless substantial prejudice is shown." *McHale v. W.D. Trucking, Inc.*, 2015 IL App (1st) 132625, ¶ 45. Further, "[w]here the trial court sustains a timely objection and instructs the jury to disregard the improper comment, the court sufficiently cures any prejudice." *Id.*

¶ 29     Here, the court sustained plaintiffs' counsel's objection and immediately gave the jury a limiting instruction that the jury should not consider any argument that is not based on the law or evidence. The court also instructed them that there was no testimony about other drugs and how they related to this case and thus, the jury should not consider any such argument. The jury is presumed to follow the instructions given to it by the court. *Id.* "'A circuit court's instruction to disregard certain evidence can cure prejudice resulting from the jury's exposure to that evidence.'" *Id.* (quoting *Kim v. Evanston Hospital,* 240 Ill. App. 3d 881, 891 (1992)). Here, the court correctly admonished the jury not to consider these improper comments and by doing so, cured any prejudice to plaintiffs arising from the improper statement. Although plaintiffs argue in their reply brief that the court abused its discretion "in refusing additional curative instructions," such an argument has no support in the record. Plaintiffs never asked the court to give additional curative instructions or identify which additional instructions they believe the court should have given. Accordingly, the statements were not so harmful or prejudicial as to constitute reversible error.

¶ 30     Next, plaintiffs contend that the circuit court erred by failing to strike defense counsel's comparison of this case with others in the courthouse and by not instructing the jury to disregard the comments. Specifically, in discussing plaintiffs' request for $3 million in damages, defense counsel stated: "There are other trials going on in this building where there's the death of a spouse." Plaintiffs objected and the court sustained the objection. Defense counsel continued: "I come into these courtrooms regularly to try cases. Frequently, juries are called upon to issue verdicts about deaths of spouses, deaths of children." Plaintiffs again objected and the court sustained the objection, stating "[i]t's not appropriate to compare that to what goes on in another case. The jury is to decide this case based solely on the evidence and the law in this case." Defense counsel then

stated: "… this is not a death case. Mr. Lyons [*sic*] is not grieving the death of his wife." Plaintiffs objected and the court overruled the objection.

¶ 31    Plaintiffs argue that defense counsel's closing arguments comparing this case to other hypothetical personal injury cases was improper and, even though the circuit court sustained their objections, defense counsel continued to compare the case to death cases, and the circuit court erred in not instructing the jury to disregard these improper comments. Defendants respond that plaintiffs did not properly preserve the issue at trial and the circuit court acted within its discretion. Additionally, plaintiffs never asked the court to strike defense counsel's remarks or instruct the jury to disregard the comments. Finally, defendants maintain that their argument was not improper because they were challenging the amount of damages plaintiffs requested.

¶ 32    Here, we agree with defendants that the court cured any prejudice from the first two comments by sustaining plaintiffs' objection and instructing the jury that it was not "appropriate" for defense counsel to compare this case to another and that the jury "is to decide this case based solely on the evidence and the law of the case."  See *McHale*, 2015 IL App (1st) 132625, ¶ 45; *Wilbourn v. Cavalenes*, 398 Ill. App. 3d 837, 854 (2010).  Plaintiffs did not ask the court for any further relief. See *Allen v. Sarah Bush Lincoln Health Center*, 2021 IL App (4th) 200360, ¶¶ 194-206 (rejecting defendant's argument that improper comments during closing arguments warranted a new trial, observing that the circuit court sustained defendant's objections to the comments and defendant failed to ask for a mistrial or any other relief before the circuit court).

¶ 33    Although the court overruled the third objection, we find that the court did not abuse its discretion by doing so.  In that comment, defense counsel mentioned that this was not a death case, which was accurate, and did not violate the court's instruction because he did not compare this case to another.

¶ 34    Plaintiffs' cited case, *Konewko v. Advocate Health & Hospitals Corp.*, 2020 IL App (2d) 190684, is distinguishable. In that case, the jury returned a verdict for defendants and plaintiff appealed, raising defense counsel's improper closing arguments as one issue warranting reversal. The appellate court found that defense counsel made "many" improper comments in the context

of a closely balanced case, inviting sympathy and injecting improper elements into the case, including that the nurse's professional reputation was at stake, she would be personally responsible for a money judgment, asking the jurors to put themselves in the nurse's position and asserting facts not in evidence. *Konewko*, 2020 IL App (2d) 190684, ¶¶ 90-106. Further, the court noted that defense counsel persisted in the improper line of argument despite the trial court's repeated attempts to stop him. In this case, in contrast, counsel made two comments that, while inappropriate, did not rise to the level of those in *Konewko*.

¶ 35     Plaintiffs also argues that defense counsel improperly "express[ed] that he was surprised by the damages requested." Plaintiffs do not identify the specific comment of which they complain, but a review of the page of the transcript cited by plaintiffs reveal that plaintiffs failed to object to any such comments. Accordingly, the argument is forfeited. *Babikian*, 2011 IL App (1st) 102579, ¶ 13.

¶ 36                    C. Comparative Fault Argument

¶ 37     Next, plaintiffs argue that defense counsel made several comments during opening statements and closing arguments and when questioning Lyons and Dr. Gorens which improperly referenced comparative fault and contributory negligence, despite the fact that defendants did not plead that affirmative defense and the court granted motions *in limine* to bar such evidence.

¶ 38     Plaintiffs identify two comments made by defense counsel during opening statement, several questions asked of Lyons during cross-examination, four questions during Dr. Gorens' testimony and two comments during closing arguments, which, they argue, were improper. These comments concern Lyons' failure to attend an appointment with Dr. Gorens and her failure to tell Dr. Gorens that her primary care physician found a lump in her breast. However, the record shows that plaintiffs never objected to any of these comments or questions. Accordingly, plaintiffs have forfeited this argument. *Babikian*, 2011 IL App (1st) 102579, ¶ 13; see *Martinelli v. City of Chicago*, 2013 IL App (1st) 113040, ¶ 39 (City forfeited claim of evidentiary error by failing to object to plaintiff's questions).

¶ 39 Forfeiture aside, we find no error. Upon reviewing the trial record, we find that defense counsel questioned Dr. Gorens regarding the sequence of events surrounding Lyons' treatment. During direct examination, Dr. Gorens testified about her knowledge of Lyons' condition at the time she administered hormone therapy, as well as the timeline in which that knowledge was obtained. Dr. Gorens' testimony did not imply or suggest that Lyons bore fault for her condition, as plaintiffs now assert. Rather, Dr. Gorens merely recounted the events that took place in her office and described the treatment she administered based upon information she had of Lyons' condition at the time.

¶ 40 The record further reflects that defense counsel's questioning was directed towards establishing whether Dr. Gorens' conduct complied with the applicable standards of care. In this context, we conclude that the evidence regarding Lyons' failure to report certain symptoms and attend appointments does not fall within the scope of the order granting any motion *in limine*. Instead, such evidence served to recount a chronological sequence of events surrounding the care of Lyons and such evidence was probative in evaluating whether Dr. Gorens deviated from the applicable standard of care. We find no error.

¶ 41 D. Personal Practice Evidence

¶ 42 Next, Plaintiffs argue that defense counsel improperly introduced evidence of Dr. Gorens' personal practice, in violation of an order on plaintiffs' motion *in limine* No. 21. That motion sought to bar "any argument, reference, evidence, or inference regarding the defendant physician's and defendant expert's personal practices on direct examination" because "any testimony regarding personal practice, whether their family members undergo hormone replacement, or they themselves undergo hormone replacement therapy" was irrelevant.

¶ 43 First, plaintiffs cite to defense counsel's comment in opening statements that Dr. Gorens treats "lawyers like Mrs. Lyons, she treats doctors, judges, bus drivers, folks from all over." Plaintiffs objected and the court overruled that objection. Plaintiffs' counsel later moved for a mistrial based on this comment, which the court denied. Plaintiffs argue that the court erred in overruling this objection because the comment violated the order on motion *in limine* No. 21. We disagree.

¶ 44        "Personal-practice testimony is testimony by a medical expert concerning how he himself typically performs the treatment at issue." *Swift v. Schleicher*, 2017 IL App (2d) 170218, ¶ 81. Counsel's statement that Dr. Gorens treats all different people in her practice did not violate the court's order—the statement did not mention how she typically performs the treatment at issue, hormone replacement therapy, and did not reference whether she or her family members undergo hormone replacement therapy. The comment merely mentioned her general patient population. Accordingly, the court did not abuse its discretion in overruling this objection. See *Gorski v. Katherine Shaw Bethea Hospital*, 2025 IL App (4th) 240093-U, ¶¶ 188-198 (no error in allowing testimony that did not violate motion *in limine*). Further, any error was cured when the court instructed the jury that opening statements are not evidence. *Walsh v. Sklar*, 2025 IL App (1st) 231830, ¶ 62.

¶ 45        Counsel then stated that Dr. Gorens "treats and gets plenty of referrals from physicians who learn what her practices focuses on: The hormonal therapy." Plaintiffs did not object to this comment and thus, their argument is forfeited. *Id.* ¶ 59.

¶ 46        Next, plaintiffs cite to Dr. Gorens' testimony on direct examination that she gave hormone therapy to her friends and family. However, plaintiffs did not object to the two questions or Dr. Gorens' answers, and thus, their argument is forfeited. *Martinelli*, 2013 IL App (1st) 113040, ¶ 39.

¶ 47        Lastly, plaintiffs cite to the following comments by defense counsel in closing argument: "[Plaintiffs' counsel] says this case is about trust. Couldn't agree more. Dr. Gorens told you that she prescribes these, estradiol and progesterone and testosterone drugs, to her family, to her friends." Plaintiffs' counsel objected and the court overruled the objection. Counsel then stated "And there's a trust between her and her family and her and her friends. She wouldn't be giving these drugs if they were dangerous and harmful and increase [the] risk of breast cancer." The court then, *sua sponte*, stated: "Well, I'm sorry. That portion of the argument should be sustained. If a lawyer makes an argument that's not based upon the evidence, you should disregard it."

¶ 48        Here, plaintiffs identify no prejudice from defendants' sole comment in closing argument where the jury ultimately found in plaintiffs' favor. See *McHale*, 2015 IL App (1st) 132625, ¶ 45.

Additionally, the court sustained plaintiffs' counsel's objection and immediately gave the jury a limiting instruction that the jury should not consider any argument that was not based on the evidence. The jury is presumed to follow the instructions given to it by the court. *Id.* "'A circuit court's instruction to disregard certain evidence can cure prejudice resulting from the jury's exposure to that evidence.'" *Id.* (quoting *Kim,* 240 Ill. App. 3d at 891). Here, the court's comments cured any prejudice to plaintiffs arising from the improper statement. Accordingly, the statements were not so harmful and prejudicial as to constitute reversible error.

¶ 49        Lastly, plaintiffs argue that defense counsel's "blatant appeals to the jury's sympathy by improperly arguing Dr. Gorens' personal practice" demonstrated that the verdict was improperly based on sympathy which was demonstrated "by the fact that multiple lines were left blank on the verdict form despite the liability against Dr. Gorens." Plaintiffs raised this argument for the first time in their reply brief and failed to raise it in their motion for a new trial, and thus, it is forfeited. Ill. Sup. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) ("Points not argued are forfeited and shall not be raised in the reply brief."); Ill. Sup. Ct. R. 366(b)(2)(iii) (eff. Feb. 1, 1994) ("A party may not urge as error on review of the ruling on the party's post-trial motion any point, ground, or relief not specified in the motion."). Forfeiture aside, the record shows that the court noticed the incomplete nature of the verdict form and sent the jury back into the jury room to complete the entire form, after which, the jury did so. We see no error in how the court handled this issue and reject plaintiffs' argument.

### E.   Cumulative Error

Plaintiffs next argue that the cumulative effect of all of these errors deprived plaintiffs of a fair trial, even if the errors alone would not require a new trial. As we have found no error or any error was cured by the court's instructions, we find no cumulative error. *In re Estate of Mankowski*, 2014 IL App (2d) 140154, ¶ 63.

¶ 50                                E. New Trial on Damages

¶ 51        Lastly, plaintiffs contend that the circuit court erred by denying their request for a new trial on damages alone. The amount of the verdict is generally within the discretion of the jury. *Hollis*

*v. R. Latoria Const., Inc.*, 108 Ill. 2d 401, 407 (1985). A reviewing court may order a new trial if the damages are manifestly inadequate or if it is clear that proved elements of damages were ignored or if the amount awarded bears no reasonable relationship to the loss suffered by the plaintiff. *Id.*

¶ 52    First, plaintiffs argue that the jury's $140,000 damages award to Lyons is manifestly inadequate given the harm suffered by Lyons, who developed two primary breast cancers, underwent years of treatment, and faces a 10-15% risk of incurable Stage IV metastatic recurrence. They claim the verdict is inconsistent with similar breast cancer cases and therefore a new trial on damages is justified. However, plaintiffs cite no case law to support their argument. Instead, plaintiffs cite only to several pages of the Jury Verdict Reporter mentioning other medical malpractice verdicts between 2000-2020, yet include no analysis of any of these cases or explanation as to why these cases are similar to the present case or dictate a similar verdict. Therefore, the argument is forfeited. See *In re Marriage of Lugo*, 2025 IL App (1st) 231478, ¶ 102 (undeveloped argument with no citation to authority is forfeited). Even if this argument were not forfeited, we decline to find Lyons' damages manifestly inadequate solely because other malpractice cases may have resulted in larger verdicts. See *Dobyns v. Chung*, 399 Ill. App. 3d 272, 287-88 (2010) (in a wrongful death case, rejecting plaintiff's reliance on other verdicts and finding that $100,000 damage award was not manifestly inadequate).

¶ 53    Next, plaintiffs argue that the jury ignored proved elements of damages, particularly the future risk of cancer recurrence, even when expert Dr. Ward's testimony on that issue was unrebutted and defense counsel did not offer evidence to dispute this future risk. Additionally, the jury awarded no damages for loss of consortium to Radford despite unchallenged evidence.

¶ 54    "A jury's award will not be found to be against the manifest weight of the evidence merely because it can be characterized as less than generous." *Branum v. Slezak Const. Co.*, 289 Ill. App. 3d 948, 953 (1997). Additionally, "mere dissatisfaction does not require a new trial on damages because the mere fact that the verdict is less than the claimed damages does not necessarily mean the award is inadequate since the jury is free to determine the credibility of the witnesses and to

assess the weight accorded to their testimony." *Id.* "Where the jury is properly instructed and has a reasonable basis for its award, a reviewing court will not disturb its verdict." *Lee v. Chicago Transit Auth.*, 152 Ill. 2d 432, 470 (1992).

¶ 55    Here, the jury found in favor of both plaintiffs, but awarded no damages to Lyons for increased risk of recurrence and no damages for Radford's loss of consortium claim. With respect to Lyons, Dr. Ward testified that with the treatment Lyons received, "there's a good chance she's cured" and there was a 10-15% chance of recurrence after 10 years, but because it had been nearly 8 years since her diagnosis at the time of trial, "the odds [were] in her favor." He also testified that women's risk of breast cancer drops five years after ending hormone therapy. The jury heard testimony about Lyons' risk of breast cancer and recurrence due to her personal family history and not her use of hormone replacement therapy. The jury heard all of this testimony and decided not to award any damages to Lyons for increased risk of recurrence. Based on the entire record, we do not find that this element of plaintiff's alleged damages was uncontroverted or indisputably proven at trial such that it was clear that the jury ignored the evidence. *See Branum*, 289 Ill. App. 3d at 953; see *Little v. City of Chicago*, 2025 IL App (1st) 231131-U, ¶ 56 (observing that the jury could have "reduced or rejected the amount requested based on the lack of clear evidence that [plaintiff] will need future surgery.").

¶ 56    Similarly, the jury heard testimony from Radford as to his loss of consortium claim and it was free to assess his credibility and determine the weight to be given to his testimony. *Branum*, 289 Ill. App. 3d at 953; *Little*, 2025 IL App (1st) 231131-U, ¶ 57 (jury was not required to accept testimony from economist regarding value of lost household services).

¶ 57    Lyons relies on *Vacala v. Village of LaGrange Park*, 260 Ill. App. 3d 599 (1994), in support of her argument that the jury ignored unrebutted testimony regarding her risk of future recurrence. We find *Vacala* distinguishable. In *Vacala*, the plaintiff provided unrebutted evidence that she incurred over $15,000 in medical bills as a result of defendants' conduct, yet the jury returned a verdict of $1,000. *Id.* at 600. The trial court granted the plaintiff's motion for a new trial on the

issue of damages only. *Id.* This court held that the circuit court did not abuse its discretion by granting a new trial on the issue of damages. *Id.* at 618.

¶ 58    The present case involves a different procedural posture than *Vacala*, as we are reviewing the circuit court's denial of Lyons' motion for a new trial for an abuse of discretion, rather than reviewing the court's decision to grant a motion for a new trial. Additionally, the plaintiff in *Vacala* provided evidence of a specific dollar amount of medical bills, which the jury clearly ignored when it awarded damages in an amount less than the medical bills in evidence. Here, Lyons did not seek damages for her medical bills or provide evidence that would support a specific dollar amount of damages.

¶ 59    Plaintiffs do not argue that the amount awarded bears no reasonable relationship to the loss suffered by the plaintiffs in this case. They further do not take issue with any of the jury instructions given in the case. Accordingly, because we reject plaintiffs' argument that the damages awarded were inadequate, it is not necessary to determine whether a new trial on all issues or on damages only is warranted. *Hollis*, 108 Ill. 2d at 408.

¶ 60                                  III.  CONCLUSION

¶ 61    For the foregoing reasons, the judgment of the circuit court is affirmed.

¶ 62    Affirmed.

¶ 63    JUSTICE OCASIO, dissenting:

¶ 64    I respectfully dissent. In my view, the majority's decision fails to fully appreciate the critical role played by the Food and Drug Administration (FDA) in regulating the safety and efficacy of pharmaceuticals and therapies. The FDA's oversight is essential in protecting the public from unsafe drugs and ensuring that therapies offered to patients meet rigorous safety standards. Ignoring the implications of this oversight undermines both public confidence and the integrity of our healthcare system.

¶ 65    The significance of informed decision-making, as well as the necessity for transparency and meaningful informed consent, is paramount—particularly when treatment involves hormones that

have not received FDA approval. This consideration becomes even more critical in cases where a patient has a family history of breast cancer, as such information may substantially influence their evaluation of potential risks and subsequent decisions.

¶ 66    The circuit court abused its discretion in granting defendants' motion *in limine* No. 33 and in denying plaintiffs' motion for a new trial based on the exclusion of evidence regarding the pellets' non-FDA approval status and related testimony. By barring Dr. Allman from referencing regulatory concerns, the court deprived the jury of information potentially crucial to assessing both liability and the extent of damages. Plaintiffs' claim that the damages would have been higher had the jury known about the pellets' regulatory status is not merely speculative, but rather a legitimate argument for prejudice, given the importance of safety and approval in medical decision-making. The record suggests that the exclusion of this testimony may have affected the outcome, particularly the amount of damages awarded.

¶ 67    It is also important to recognize that had the jury been made aware that the plaintiff received a treatment regimen involving compounded hormone pellets not approved by the FDA, this information could have significantly impacted their assessment of the case. The jury may have considered the additional risks associated with non-FDA approved therapies and, as a result, been more receptive to awarding a higher amount of damages to compensate for the potential harm and uncertainty faced by the plaintiff. Such knowledge would underscore the gravity of the plaintiff's situation and the heightened vulnerability resulting from unregulated treatment options.

¶ 68    The defendant affirmatively represented to the plaintiff that hormone pellet therapy would reduce her risk of breast cancer, notwithstanding the plaintiff's documented family history of the disease. Without evidence that the hormone pellet therapy was not FDA approved, the jury could have determined that the defendant's failure to obtain informed consent constituted a technical oversight rather than a significant infringement upon the plaintiff's right to make an informed medical decision. Had the jury been allowed to consider the excluded evidence, it might have interpreted the defendant's assurances and the withheld information in a substantially different manner. This perspective is directly pertinent to the jury's assessment of the plaintiff's

noneconomic damages resulting from a treatment she otherwise would have declined. Consequently, the plaintiffs are entitled to a new trial on damages.

¶ 69    Plaintiffs were also prejudiced by defense counsel's improper remarks during closing argument. While some of these improper arguments were not preserved for review by plaintiffs under traditional forfeiture principles, it has been argued that the better policy is to place the duty of care to prevent errors on the party who commits the error or who benefits from the judge's error. See Darryl K. Brown, *Does It Matter Who Objects? The Burden to Prevent Errors in Criminal Process*, 98 Tex. L. Rev. 625 (2020). This approach would encourage greater accountability among litigants and ensure that procedural fairness is maintained throughout the trial process. Placing the burden on the responsible party helps protect the integrity of judicial proceedings and may reduce the likelihood of prejudicial outcomes. Although the court is bound by current forfeiture law, it creates perverse incentives to, as defense counsel did here, push the boundaries of fair argument. This dynamic may encourage parties to exploit procedural technicalities or advance arguments that undermine the spirit of fairness and justice, rather than addressing the substantive merits of the case. As a result, the integrity of the trial process can be compromised when legal strategies prioritize winning over equitable outcomes. This is ultimately an issue that should be considered by our rulemakers, whether it be the legislature or our own supreme court, as they are best positioned to address the complexities and broader policy implications involved.

¶ 70    Even if no single error in the proceedings is sufficient to warrant reversal, I believe that the cumulative effect of the errors—when considered together—demands reversal. It is evident from the record that the jury appeared to disregard or overlook the potential significance of the regulatory status of the hormone pellets at issue. Despite the relevance of FDA approval to both liability and the extent of injury, the jury's verdict did not reflect any consideration of the risks associated with non-FDA approved therapies. This omission suggests that, without the benefit of testimony and evidence concerning the lack of FDA approval, the jury may not have fully appreciated the gravity of the plaintiff's situation or the heightened vulnerabilities resulting from unregulated treatment options. Such apparent disregard underscores the necessity of a new trial on

damages, so that the jury can properly weigh all pertinent factors, including regulatory oversight, in reaching a fair and informed decision.

¶ 71   For these reasons, and with due respect to my colleagues, I must dissent from today's decision.